Chris M. Mason – 019891
cmason@jsslaw.com
Jimmie W. Pursell, Jr. - 19957
jpursell@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Attorneys for R.E.D. Plumbing, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| R.E.D. Plumbing Inc., an Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AZ Best Plumbing, LLC, an Arizona limited liability company; Keith Rhodes and Jane Doe Rhodes, husband and wife; and Josh Reid and Jane Doe Reid, husband and wife,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff R.E.D. Plumbing Inc. ("RED" or "Plaintiff"), for its complaint against Defendant AZ Best Plumbing, Inc. ("AZ Best"), Keith Rhodes, and Josh Reid (collectively "Defendants"), alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a corporation incorporated in Arizona.

2. Defendant AZ Best Plumbing LLC is an Arizona limited liability company organized under Arizona law.

3. This Court has exclusive and original jurisdiction over Count IV under 15 U.S.C. § 4.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the remaining claims within this Complaint because the matters therein asserted are part of the same case or controversy as that alleged in Count IV.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all Defendants are residents of Arizona, and a substantial part of the events giving rise to the claims herein asserted occurred in this judicial district.

## FACTUAL BACKGROUND

6. Plaintiff is a family business that has provided plumbing services throughout northern Arizona for twenty years.

7. Over the years, Plaintiff has built a reputation for reliability partly through developing its employees.

8. In or around the last quarter of 2022, an AZ Best representative contacted RED and indicated that AZ Best wanted to purchase RED's business operations pursuant to an expansion into northern Arizona.

9. RED declined the offer.

10. Thereafter, upon information and belief, AZ Best resolved to retaliate against RED's refusal to sell by harming RED's business.

11. Defendant Keith Rhodes began working for RED on December 7, 2018, and Keith Rhodes became RED's service manager on January 31, 2022.

12. Beginning On June 1, 2021, Red employed Josh Reid as a Service Technician.

### Rhodes Recruitment and Resignation

13. At some point in late 2022, AZ Best made an offer of employment to Keith Rhodes.

14. The wage under this offer is so high that, upon information and belief, it is unproductive for AZ Best.

15. Mr. Rhodes accepted this opportunity without notifying RED until his final day working for RED.

16. Upon information and belief, Defendant instructed Mr. Rhodes to bring as many of Plaintiff's employees with him as he could.

2

17. After accepting his offer but before notifying RED, Mr. Rhodes began soliciting his co-workers to come with him to AZ Best while still employed by and receiving compensation from RED.

18. Mr. Rhodes offered employment to a range of Plaintiff's employees, including individuals in the service and administrative departments.

19. Mr. Rhodes told employees that AZ Best would hire all of them and that AZ Best would pay salaries far above the market rate.

20. Upon information and belief, Mr. Rhodes downloaded and absconded with confidential business information from RED's hard drives prior to departing.

21. This includes accounting information, client lists, and data on RED's billing practices and pricing.

22. Upon information and belief, AZ Best encouraged, assisted, and/or requested that Mr. Rhodes bring this confidential material with him after resigning from RED.

23. Mr. Rhodes announced his resignation from RED on November 8, 2022.

**Reid Recruitment and Resignation**

24. Either before or shortly after Mr. Rhodes' resignation, upon information and belief, AZ Best, through Mr. Rhodes, gave Mr. Reid an offer of employment.

25. The wage under this offer is so high that, upon information and belief, it is unproductive for AZ Best.

26. At some point in November 2022, Mr. Reid accepted this offer.

27. Upon information and belief, Mr. Reid stole multiple tools from RED's facility, including tools off of his former co-workers' work vehicles, before or shortly after formally resigning.

28. Mr. Reid used RED's ordering system to order several water softeners prior to resigning.

8679851v3(65453.2)

29. These water softeners were never delivered to RED, but rather, upon information and belief, were picked up by Mr. Reid and given to a third party.

30. Upon information and belief, Mr. Reid ordered these water softeners on behalf of AZ Best.

31. Mr. Reid resigned, without warning, on November 30, 2022 and began working for AZ Best.

### A Campaign of Predatory Hiring

32. Upon information and belief, AZ Best instructed Mr. Rhodes and/or Mr. Reid to recruit his former coworkers from RED or otherwise assisted or encouraged Mr. Rhodes and/or Mr. Reid in recruiting these employees.

33. Upon information and belief, AZ Best's recruitment of RED's employees was not premised on acquiring new talented employees, but rather to harm RED in retaliation for RED's refusal to sell its assets to AZ Best.

34. Upon information and belief, AZ Best sought to hire RED's employees in a manner designed to drive RED out of business.

35. Upon information and belief, AZ Best, through Mr. Rhodes and/or Mr. Reid, is hiring some of RED's employees at unproductive wages and/or with the representation of unproductive wages.

36. Upon information and belief, AZ Best, through Mr. Rhodes and/or Mr. Reid, has recruited, and continues to recruit, RED employees with the promise of high salaries and compensation that it does not intend to actually provide.

37. Upon information and belief, AZ Best, through Mr. Rhodes and/or Mr. Reid, is withholding material terms of employment from RED's employees as it levies these offers, in an attempt to inflate the attractiveness of the position and harm RED by spurring its employees to leave.

38. Upon information and belief, AZ Best is losing money by employing some of the former RED employees because these employees' compensation outpaces the revenue they generate.

4

39. Upon information and belief, AZ Best is offering and/or paying former RED employees a salary that is nearly double the market rate in northern Arizona for service technicians and/or managers.

40. AZ Best undertook to hire RED's employees solely to harm RED and acquire market share.

41. Thereafter, AZ Best began offering employment to RED employees on a weekly basis.

42. Stephen Libbey, a RED employee since August 12, 2020, resigned from RED and thereafter began working for AZ Best on December 6 2022.

43. Mr. Libbey provided no notice and resigned in the morning.

44. Andrew Karneke, a RED employee since February 8, 2021, resigned from RED and thereafter began working for AZ Best on December 9, 2022.

45. Mr. Karneke provided no notice and resigned in the morning.

46. Chris Meldrem, a RED employee since February 10, 2022, resigned from RED and thereafter began working for AZ Best on December 11, 2022.

47. Mr. Meldrem provided no notice and resigned in the morning.

48. Each resigned suddenly, in the morning, and without providing any notice.

49. By occurring in the morning, these resignations were timed to maximize the damage done to RED.

50. As a result, RED was forced to cancel appointments and use employees from other departments to fulfill service duties.

51. Mr. Reid and Mr. Rhodes recruited a fourth employee, Richard Elam, on March 28, 2022.

52. Mr. Elam, unlike the prior departures, provided two-weeks' notice to RED.

53. Mr. Elam told RED that an AZ Best employee told him to resign without giving notice as a condition of getting the job at AZ Best.

5

54. Upon information and belief, AZ Best deliberately formulated its recruitment strategy to maximize the damage to RED's business by instructing leaving employees to provide no notice and quit in the morning – before the busy daily plumbing schedule was underway.

55. RED was forced to decline long term business opportunities and cancel outstanding contracts as a direct result of these sudden and unannounced departures.

56. Mr. Reid and Mr. Rhodes furnished, and continue to furnish, offers of employment or other solicitations of future employment to many RED employees.

57. Mr. Reid and Mr. Rhodes have told employees that they will continue to call even after an employee declines the offer.

58. Plaintiff requests a jury trial for all claims triable by a jury.

### COUNT I – Breach of Fiduciary Duty – Rhodes

59. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

60. As RED's employee, Mr. Rhodes owed certain fiduciary duties to RED including the duties of loyalty and good faith.

61. Mr. Rhodes' fiduciary duties prohibited him from, *inter alia*, (1) competing with RED while under its employment and receiving compensation from RED; (2) failing to inform RED of his new employer while continuing to access RED's confidential information, including pricing and billing information; (3) delivering RED's confidential information to AZ Best; and (4) working as AZ Best's agent in arranging for RED employees to depart without providing notice to RED.

62. Mr. Rhodes breached his fiduciary duties, including those listed above.

63. Mr. Rhodes' breaches occurred, at least partially, while employed by RED.

64. As a direct and proximate result of Mr. Rhodes' breaches of his fiduciary duties, RED has suffered, and continues to suffer damages including lost

6

profits, compensation given to Mr. Rhodes while he was in breach of his fiduciary duties, and other compensatory damages.

65. Mr. Rhodes deliberately breached his fiduciary duties with the intent of harming RED.

66. Accordingly, Mr. Rhodes is liable to RED for punitive damages.

## COUNT II – Breach of Fiduciary Duty - Reid

67. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

68. As RED's employee, Mr. Reid owed certain fiduciary duties to RED including the duties of loyalty and good faith.

69. Mr. Rhodes' fiduciary duties prohibited him from, *inter alia*, (1) competing with RED while under its employment and receiving compensation from RED; (2) failing to inform RED of his new employer while continuing to access RED's confidential information, including pricing and billing information; (3) delivering RED's confidential information to AZ Best; (4) working as AZ Best's agent in arranging for RED employees to depart without providing notice to RED; (5) stealing RED property; (6) giving RED property to AZ Best; and (7) using RED's ordering system to acquire goods on AZ Best's behalf.

70. Mr. Reid breached his fiduciary duties, including those listed above.

71. Mr. Reid's breaches occurred, at least partially, while employed by RED.

72. As a direct and proximate result of Mr. Reid's breaches of his fiduciary duties, RED has suffered, and continues to suffer damages including lost profits and other compensatory damages.

73. Mr. Reid deliberately breached his fiduciary duties with the intent of harming RED.

74. Accordingly, Mr. Reid is liable to RED for punitive damages.

8679851v3(65453.2)

**COUNT III – Aiding and Abetting Breach of Fiduciary Duty – AZ Best**

75. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

76. As alleged in Counts I and II of this Complaint, Mr. Rhodes and Mr. Reid owed certain fiduciary duties to Plaintiff.

77. As alleged in Counts I and II of this Complaint, Mr. Rhodes and Mr. Reid breached their fiduciary

78. As alleged in Counts I and II of this Complaint, Mr. Rhodes and Mr. Reid's breaches of their fiduciary duties caused and continue to cause significant economic damages to RED.

79. Upon information and belief, AZ Best encouraged, instructed, directed, assisted, and aided Mr. Rhodes and Mr. Reid in breaching their fiduciary duties, including by (1) instructing Mr. Rhodes and Mr. Reid to recruit AZ Best's employees while employed with RED; (2) encouraging Mr. Reid to take RED's tools before departing; (3) encouraging Mr. Reid to place orders for water heaters using RED's system; (4) receiving Mr. Reid's illegally received water heaters and ratifying his actions; and (5) encouraging or otherwise assisting Mr. Rhodes in taking RED's confidential data prior to his departure.

80. AZ Best knew Mr. Rhodes and Mr. Reid's actions would constitute a breach of their fiduciary duties.

81. A causal relationship exists between AZ Best's encouragement and assistance of Mr. Rhodes and Mr. Reid's breaches and Mr. Rhodes and Mr. Reid's breaches.

82. AZ Best's encouragement and substantial assistance of Mr. Rhodes and Mr. Reid's breaches caused, and continues to cause, significant economic damages and other compensatory damages to RED.

8

83. AZ Best repeatedly aided and abetted Mr. Rhodes and Mr. Reid in breaching their fiduciary duties, seeking to cause economic harm to RED and drive RED out of business.

84. This constitutes reprehensible conduct taken with an evil mind.

85. Accordingly, RED is entitled to punitive damages.

**COUNT IV – Violation of Section 2 of the Sherman Act – AZ Best**

86. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

87. Under Section 2 of the Sherman Act, it is unlawful for a business to hire a competitor's employees not for the purpose of using those employees, but rather to harm the competitor.

88. AZ Best made an unsolicited offer to purchase RED.

89. RED declined the offer.

90. In retaliation, AZ Best began hiring RED's employees at above market wages.

91. Upon information and belief, these wages are so elevated that they are unproductive for AZ Best.

92. Upon information and belief, AZ Best hired these employees at unproductive wages to harm RED and drive RED to either sell the company to AZ Best or cease business operations and cede market share to AZ Best.

93. Upon information and belief, AZ Best seeks to raise market rates for plumbers to an unproductive level to force competitors out of business.

94. AZ Best's past and ongoing anticompetitive actions are the proximate cause of RED's economic injury.

95. As a consequence of AZ Best's actions, RED has suffered, and continues to suffer, significant economic damages and other compensatory damages.

**COUNT V – Violation of A.R.S. § 44-1403 – AZ Best**

96. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

97. Under A.R.S. § 44-1403, it is unlawful in Arizona to establish or attempt to establish a monopoly of trade or commerce for the purpose excluding competition or controlling or maintaining prices.

98. AZ Best made an unsolicited offer to purchase RED.

99. RED declined the offer.

100. In retaliation, AZ Best began hiring RED's employees at above market wages.

101. Upon information and belief, these wages are so elevated that they are unproductive for AZ Best.

102. Upon information and belief, AZ Best hired these employees at unproductive wages to harm RED and drive RED to either sell the company to AZ Best or cease business operations and cede market share to AZ Best.

103. Upon information and belief, AZ Best seeks to raise market rates for plumbers to an unproductive level to force competitors out of business.

104. AZ Best's past and ongoing anticompetitive actions are the proximate cause of RED's economic injury.

105. As a consequence of AZ Best's actions, RED has suffered, and continues to suffer, significant economic damages and other compensatory damages.

**COUNT VI – Tortious Interference with Contract – All Defendants**

106. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

107. Plaintiff had valid employment agreements with Stephen Libbey, Andrew Karneke, Chris Meldrem, and Richard Elam (the "Employee Agreements").

108. Defendants knew those employees were subject to the restrictions contained within the Employee Agreements.

10

109. Defendants intentionally interfered with the Employee Agreements by offering above-market wages to employees who would agree to walk away from RED without providing notice.

110. The employees subject to the Employee Agreements breached as a result of Defendants' intentional interference.

111. The employees' breach caused significant and continuing economic and other compensatory damages to RED as a result of the disruption to the employment relationships.

112. Defendants interfered with the Employee Agreements with the purpose of harming RED.

113. Defendants' interference constitutes an improper purpose.

114. As a consequence of Defendants' actions, RED has suffered, and continues to suffer, significant economic damages and other compensatory damages.

## COUNT VII – Unfair Competition – AZ Best

115. Plaintiff incorporates by reference all other allegations in this Complaint as if fully set forth herein.

116. AZ Best attempted to purchase Plaintiff's business.

117. Plaintiff rejected AZ Best's offer.

118. As a consequence of Plaintiff's denial of this offer and AZ Best's intent to acquire market share to Plaintiff's detriment, AZ Best engaged in unethical and dishonest business conduct designed to harm Plaintiff.

119. AZ Best has offered and continues to offer unproductive wages to RED's employees to entice the employees to leave RED's employment.

120. Upon information and belief, AZ Best is paying former RED employees unproductive wages.

121. Upon information and belief, AZ Best instructed Mr. Rhodes and Mr. Reid to breach their fiduciary duties owed to RED.

8679851v3(65453.2)

122. Upon information and belief, AZ Best has tendered fraudulent offers of employment to RED employees that misrepresent the compensation that the employees would receive at AZ Best.

123. Defendant has is offering unproductive wages to RED's employees to entice the employees to leave RED's employment.

124. AZ Best's conduct is contrary to honest practice in industrial and commercial matters.

125. As a consequence of AZ Best's actions, RED has suffered, and continues to suffer, significant economic damages and other compensatory damages.

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

A.  For the damages in an amount to be proven at trial, including consequential damages;

B.  For an injunction permanently enjoining AZ Best, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, from (1) engaging in any act constituting unfair competition or predatory hiring, including by offering to employ or employing RED's employees at above-market rates; (2) using any statements, representations, or depictions that misrepresent AZ Best's compensation model to entice RED employees to resign; (3) instructing RED employees to resign in a manner designed to harm RED, including by conditioning offers of employment on the resignation occurring in a certain manner; and (4) engaging in any activity constituting unfair competition with Plaintiff;

C.  For an award of Plaintiff's court costs;

D.  For an award of Plaintiff's attorneys' fees; and

E.  For such other relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

Dated this 28th day of March, 2023.

                                    JENNINGS, STROUSS & SALMON, P.L.C.

                              By  *s/ Jimmie W. Pursell, Jr.*
                                    Chris M. Mason
                                    Jimmie W. Pursell, Jr.
                                    One East Washington Street, Ste. 1900
                                    Phoenix, Arizona  85004-2554
                                    *Attorneys for R.E.D. Plumbing Inc.*